Case 4:24-cv-01414   Document 16   Filed on 07/11/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 11, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| V. A.,<br><br>　　　*Plaintiff*,<br><br>v.<br><br>Martin O'Malley,<br>Commissioner of Social Security,[1]<br><br>　　　*Defendant*. | Civil Action No. 4:24-cv-01414 |

## MEMORANDUM AND RECOMMENDATION

This appeal from an administrative ruling denying social security benefits was referred to the undersigned judge. Dkt. 5. After carefully considering the parties' briefs, Dkt. 10, 15, the record, Dkt. 3, and the applicable law, it is recommended that Plaintiff V. A.'s motion for summary judgment (Dkt. 10) be granted, the Commissioner of Social Security's cross-motion (Dkt. 15) be denied, and the Commissioner's decision be vacated and remanded for further proceedings.

## Background

Plaintiff applied for disability insurance benefits on August 13, 2021, alleging an onset date of September 1, 2017. R.43, 286. After her application

---

[1] The Court is aware that Frank Bisignano is the current Commissioner of Social Security. But no request to substitute Bisignano for O'Malley has been made.

was denied initially and upon reconsideration, Plaintiff sought and received a telephone hearing before an administrative law judge ("ALJ"), where Plaintiff and a vocational expert testified. R.43, 235-69. After the hearing, the ALJ issued an opinion concluding that Plaintiff did not qualify as disabled. *See* R.43-56.

The ALJ found that Plaintiff's past relevant work as a hair braider, cleaner, kitchen helper, and home health care provider did not qualify as substantial gainful activity. R.45-46. At step two, the ALJ found that Plaintiff had the following severe impairments: status-post foot fracture, disorders of the bilateral feet including flat feet, obesity, bipolar disorder, post-traumatic stress disorder, polysubstance abuse disorder, and generalized anxiety disorder. R.46. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that meets or equals a listing. *Id.*

After considering the record, the ALJ formulated Plaintiff's residual functional capacity ("RFC") to include medium work, as defined in 20 C.F.R. § 416.967(c). R.49. Specifically, the ALJ found that Plaintiff can

> lift and/or carry 25 pounds occasionally and 50 pounds frequently,[2] and she has no limitations sitting. However, due to foot pain the claimant can stand and/or walk only four to five hours in an eight-hour workday. Further, the claimant can only occasionally

---

[2] This clause contains a typographical error. Elsewhere, the ALJ's determination that Plaintiff can perform medium work reflects a finding that Plaintiff can lift 50 pounds occasionally and 25 pounds frequently. *See* R.53 (discussing findings of Dr. Patty Rowley).

2

> negotiate stairs and ramps. Mentally, the claimant can understand, remember, and carry out detailed and simple tasks, but not complex task [sic]. To minimize stress, the claimant should never be required to work at an assembly pace. Lastly, due to her social limitations, the claimant should never be required to interact with the public on more than an occasional basis and she should never be required to work in proximity to crowds.

*Id.* Given this RFC, the ALJ found at step four that Plaintiff was unable to perform her past relevant work. R.54. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including mail room clerk, office helper, and garment sorter. R.55. The ALJ therefore found Plaintiff not disabled. R.56.

The Social Security Administration Appeals Council denied review, which rendered the decision ripe for this Court's review. *See* R.22; 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## **Legal standard**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (quotation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'"

3

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotation omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing

4

any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five. *See id.* at 776 n.2 (quoting § 416.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing § 416.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. The ALJ's consideration of Plaintiff's noncompliance with prescribed treatment and substance abuse warrants reversal.

Plaintiff challenges the ALJ's analysis of her mental impairments, which informed the RFC. Specifically, Plaintiff argues that the ALJ improperly discredited her mental-symptom severity based on her missed appointments with mental health providers. *See* Dkt. 10 at 11 (citing R.51). Plaintiff also challenges the ALJ's assumption that her abnormal mental status exams resulted from noncompliance with recommended treatment and drug abuse. *See id.* at 11-12 (citing R.52). In addition, Plaintiff contends that the ALJ erred

5

by relying on this noncompliance determination in finding Dr. Jorge Raichman's mental health opinion unpersuasive. *See id.* at 14.

The Commissioner's brief is largely nonresponsive on those points. It cites a record noting that Plaintiff missed an appointment due to "no escort available," arguing that Plaintiff's lack of transportation does not suggest she cannot work. *See* Dkt. 15 at 9 (citing R.854, a March 29, 2016 record). But that record was from the year before Plaintiff's claimed disability onset date. *See* R.43 (September 1, 2017 onset date). The ALJ's findings detailed below did not rely on that record.

> **A. The ALJ relied on Plaintiff's treatment non-compliance and drug use when forming the RFC.**

When formulating the RFC, the ALJ considered Plaintiff's testimony that she had sought treatment for mental health issues for many years. R.50. The opinion notes Plaintiff's hearing testimony that she "last used street drugs when she realized she was pregnant in August [2023]," but she "admitted to abusing street drugs recently (i.e. before she found out she was pregnant) against medical advice." *Id.* (citing R.254-56). Yet, as the opinion observes, Plaintiff's health care provider told her "that street drugs would negate the effect of her mental health medication and it would affect her mood." *Id.* Those observations informed the ALJ's conclusion that Plaintiff's statements about

6

the "intensity, persistence, and limiting affects" of her symptoms were "not entirely consistent" with the record. *Id.*

As another overarching conclusion, the ALJ found a "history of noncompliance"—including "poor compliance with appointments and medications" and "abusing cocaine"—that purportedly explained Plaintiff's abnormal mental status exams. *See* R.52. Specifically, the ALJ's opinion spotlighted Plaintiff's June 2023 exam, which indicated paranoid delusions and deficient memory, and found it "likely this exam was during a time when [Plaintiff] was not compliant with her medication and/or abusing street drugs."[3] *See id.* (citing R.816). For similar reasons, the ALJ found Dr. Raichman's August 2023 opinion unpersuasive, discounting its indication that Plaintiff had poor concentration and needed to miss at least four workdays each month for mental health reasons. R.53-54. According to the ALJ, Dr. Raichman's opinion was "speculative" and flew "in the face of [her] many normal mental status examinations *when she was treatment compliant.*" R.52, 54 (emphasis added) (citing R.1489-91). The resulting RFC did not include limitations related to Dr. Raichman's asserted absenteeism. *See* R.49.

---

[3] The ALJ's opinion also noted several mental status exams that were "negative despite the claimant's street drug abuse." R.50-51 (citing exams in September 2019, January 2020, June 2020, and July 2022).

7

Plaintiff's failure to attend several mental health appointments also informed the ALJ's conclusions. R.51-52; R.600-01, 606 (January and June 2021, Harris County Center for Mental Health); R.779 (February 2022, Dr. Raichman). According to the ALJ, Plaintiff "missed these appointments most likely because her mental condition was not as severe as she avers," and Plaintiff's "[p]oor compliance reflects poorly on [Plaintiff's] allegations about the severity of [her] symptoms." R.51-52. Similarly, the ALJ found that Plaintiff's drug abuse was "not consistent behavior one would expect for an individual claiming to suffer from a debilitating mental impairment." R.52.

> **B.   The ALJ did not apply the framework for analyzing Plaintiff's noncompliance with treatment and her use of illegal drugs, warranting reversal.**
>
> 1.   <u>Treatment noncompliance under SSR 18-3p</u>

The ALJ's emphasis on Plaintiff's failure to follow prescribed treatment implicates SSR 18-3p, 2018 WL 4945641, at *2-3 (S.S.A. Oct. 2, 2018). Under SSR 18-3p, the impact of a claimant's failure to follow prescribed treatment on his ability to work should not be considered unless it is first determined that the claimant is entitled to disability benefits. *See id.*; *see also, e.g., Polk v. Kijakazi*, 2024 WL 4219741, at *6 n.5 (S.D. Tex. Sept. 17, 2024) ("Having determined that [plaintiff] was not disabled, the ALJ was foreclosed from evaluating [plaintiff's] non-compliance with treatment."). This means an ALJ should not, either implicitly or explicitly, consider a claimant's treatment

8

noncompliance when formulating the RFC. *See Henson v. Comm'r of Soc. Sec.*, 2021 WL 8776794, at *5 (N.D. Tex. Dec. 14, 2021), *adopted by* 2022 WL 2078211 (N.D. Tex. June 9, 2022). SSR 18-3p does not, however, apply if the ALJ merely considered the Plaintiff's noncompliance as part of a credibility determination. *See id.* at *4 (citing *Mitchell v. Colvin*, 2013 WL 4546729, at *7 (N.D. Tex. Aug. 28, 2013)).

Portions of the ALJ's analysis can be construed as discrediting Plaintiff's statements about the severity of her mental health symptoms. *See* R.51-52. This is particularly true where the ALJ cited the missed appointments as evidence that Plaintiff's "mental condition was not as severe as she avers."[4] *See* R.51; *cf. Donald W. v. Kijakazi*, 2024 WL 1076838, at *8 (N.D. Tex. Jan. 26, 2024) (example of noncompliance with treatment to discredit claimant's statements about symptom severity, where claimant failed to follow up on a knee surgery referral, "which suggests that the symptoms may not have been as serious" as claimed), *adopted by* 2024 WL 1008533 (N.D. Tex. Mar. 8, 2024).

---

[4] Even that finding is subject to a potential caveat. The relevant regulation notes that a claimant will not be deemed disabled if she "do[es] not follow the prescribed treatment *without a good reason* ...." 20 C.F.R. § 404.1530(b) (emphasis added). "Noncompliance that is a result of a mental impairment may constitute an acceptable reason." *See Lanier v. Comm'r of Soc. Sec.*, 2024 WL 4206111, at *13 & n.6 (W.D. La. Aug. 30, 2024) (quoting 20 C.F.R. § 404.1530(c)) (collecting cases), *adopted by* 2024 WL 4203999 (W.D. La. Sept. 16, 2024). Plaintiff has not adequately raised this issue, so the Court need not resolve it here.

But the ALJ's opinion went further, by linking Plaintiff's mental health conditions to her treatment noncompliance. According to the ALJ, Plaintiff's June 2023 mental status exam reported paranoid delusions and deficient memory because Plaintiff was "not compliant with her medication and/or abusing street drugs." R.52 (citing R.816). Similarly, the ALJ blamed Plaintiff's poor concentration at Dr. Raichman's August 2023 exam on Plaintiff's noncompliance with prescribed treatment. *See* R.52, 54. Based on Plaintiff's "many normal mental status examinations when she was treatment compliant," the ALJ discredited Dr. Raichman's opinion that Plaintiff's mental impairments would cause her to miss at least four workdays a month. R.53-54. And more generally, the ALJ noted Plaintiff's "poor compliance" with treatment and found her abnormal mental status exams "appear[ed] to coincide with times the claimant was abusing cocaine." R.52.

In sum, numerous findings attributed Plaintiff's conditions to her not attending appointments and not heeding physicians' warnings to refrain from drug use. Those findings influenced the ALJ's formulation of the RFC. "Consequently, the ALJ failed to reach his RFC conclusion independently of compliance considerations and did not follow the procedural safeguards in SSR 18-3p regarding failure to follow prescribed treatment." *See Henson*, 2021 WL 8776794, at \*6. This error tainted the RFC, which "should be determined

independently of noncompliance." *Id.* Under these circumstances, reversal is warranted. *See id.* at *6, *8.

### 2. Drug abuse under SSR 13-2p

The ALJ also erred in considering Plaintiff's drug abuse. Like noncompliance with prescribed treatment, drug abuse "becomes an issue in a social security claim ... only *after* the ALJ finds the claimant disabled." *See Edwards v. Kijakazi*, 2023 WL 2386748, at *5 (S.D. Tex. Mar. 6, 2023) (citing *Pena v. Colvin*, 2014 WL 12540442, at *3 (S.D. Tex. June 12, 2014)), *adopted by* 2023 WL 2616018 (S.D. Tex. Mar. 22, 2023); *see also* 20 C.F.R. § 416.935(a). In that context, the ALJ must determine whether Plaintiff "would continue to be disabled if ... she stopped using drugs or alcohol ...." SSR 13-2p, 2013 WL 621536, at *2 (citing 20 C.F.R. §§ 404.1535, 416.935). When a plaintiff is not found disabled, "repeated consideration of her drug and alcohol use is error that warrants remand." *Edwards*, 2023 WL 2386748, at *5.

At times, the ALJ's opinion considered Plaintiff's drug use in the context of noncompliance with treatment—namely, medical advice to avoid street drugs due to negative interaction with psychotropic medications. *See* R.50. But elsewhere, the ALJ discussed drug abuse itself as a cause of Plaintiff's symptoms. Indeed, as in *Edwards*, the ALJ questioned Plaintiff's drug abuse several times in the oral hearing and mentioned it several times in his opinion. *See* 2023 WL 2386748, at *5 & n.2; *see also* R.50, 52, 254-56. For example, the

ALJ's finding that Plaintiff had some normal mental status exams "despite [her] street drug abuse" suggests that the opinion prematurely addressed the impact of Plaintiff's drug use on her symptoms. *See* R.50. But more directly, the finding that Plaintiff's abnormal mental symptoms *resulted from* "abusing street drugs" or "abusing cocaine" does not comport with SSR 13-2p.[5] *See* R.52.

Because Plaintiff "was not found disabled, the ALJ's references to her substance abuse were improper." *See Edwards*, 2023 WL 2386748, at *5. Failure to follow the requirements in SSR 13-2p requires reversal. *See id.*; *see also* SSR 13-2p, 2013 WL 621536, at *4.

### Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff V. A.'s motion for summary judgment (Dkt. 10) be **GRANTED**, that the Commissioner's cross-motion (Dkt. 15) be **DENIED**, and that the Commissioner's decision be **VACATED** and **REMANDED** for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude**

---

[5] The inconsistency between normal mental status exams *despite drug abuse* and abnormal exams *because of drug abuse* could be resolved by properly applying SSR 13-2p's requirement to analyze the impact of Plaintiff's drug use on her symptoms.

**appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on July 11, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge